UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CHRISTOPHER MACK CHARLES,
     Plaintiff,

vs.                           Case No.: 3:22cv10106/TKW/ZCB

P.A. DITTMAN, et al.,
     Defendants.
_____/

## **REPORT AND RECOMMENDATION**

Plaintiff, proceeding *pro se* and *in forma pauperis*, commenced this case by filing a civil rights complaint. (Doc. 1). Exercising its statutory screening obligation under 28 U.S.C. § 1915(e)(2)(B), the Court has issued two orders that identified deficiencies in Plaintiff's prior pleadings and ordered him to either amend the pleadings or voluntarily dismiss the case.[1] (Docs. 12, 20). Plaintiff has now filed a second amended complaint. (Doc. 22). The Court has screened the second amended complaint to determine if it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune.

---

[1] A plaintiff should be provided with "at least one chance to amend the complaint before the district court dismisses the action." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).

*See* 28 U.S.C. § 1915(e)(2)(B).  For the reasons below, dismissal is warranted because the second amended complaint fails to state a claim upon which relief may be granted.

## I.    Background

Plaintiff names three Defendants in this action: (1) Officer P.A. Dittman, (2) Warden S.G. May of the Walton Correctional Institution,  and (3) T. Bowden, the "Secretary's Representative."  (Doc. 14 at 3-4).  He sues Defendants in their individual capacities only.  (*Id.*).

On February 16, 2020, while confined at Walton Correctional Institution, Plaintiff was found in possession of 40 grams of the synthetic cannabinoid K2.  (*Id.* at 6).  Plaintiff was placed in administrative confinement and received a disciplinary report three days later, charging Plaintiff with a violation of Florida Administrative Code § 33-601.314(3), which forbids possession of narcotics, unauthorized drugs, and drug paraphernalia.  (*Id.*).  The following day, Plaintiff was found guilty at a disciplinary hearing on the charge.  (*Id.* at 6-7).  Plaintiff was sentenced to 60 days of disciplinary confinement and given credit for the four days he spent in administrative confinement.  (*Id.* at 7).

Approximately two weeks later, on March 5, 2020, an officer—who is not named as a Defendant in this action—recommended changing Plaintiff's

2

confinement to close management I on the basis of "trafficking in drugs." (*Id.*).  An institutional classification team then held a hearing on March 11, 2020 to determine whether to follow the officer's recommendation.  (*Id.*).  "After considering all perti[n]ent information," the institutional classification team recommended close management based on Plaintiff's drug "trafficking."  (*Id.* at 7-8).  The recommendation was then reviewed by Defendant Dittman, who approved it but modified the close management status to level II.  (*Id.* at 8).  Plaintiff contends a drug possession infraction does not authorize placement of an inmate on close management status II, thus rendering the entire pre-deprivation hearing "inadequate."  (*Id.*).  Plaintiff claims Defendants May and Bowden also deprived Plaintiff of his "right to liberty" by confining Plaintiff to close management II status. (*Id.* at 9).

On March 25, 2020, Plaintiff sought "administrative relief" from the decision confining him to close management II.  (*Id.* at 10).  He argued that possession of unauthorized drugs did not constitute a basis for confining a prisoner to close management and thus the statement of reasons for keeping Plaintiff confined was inadequate.  (*Id.*).  It appears Defendant May denied Plaintiff's request.  (*Id.*).

On April 19, 2020, Plaintiff then appealed Defendant May's decision to the Secretary of the Florida Department of Corrections.  (*Id.*).  Again, Plaintiff argued

that possession of unauthorized drugs did not constitute a basis for close management II confinement. (*Id.* at 11). Defendant Bowden affirmed the decision to place Plaintiff in close management II "on the grounds that Plaintiff was found in possession of 40 grams of K-2 spice and []his negative behavior show[ed] an inability to follow the rules." (*Id.*).

Plaintiff was then transferred to Santa Rosa Correctional Institution. (*Id.*). There, Plaintiff claims he was confined to a "six feet by eight feet cell, and kept there twenty-four hours a day seven days a week and remained until February 2021 (335 days)." (*Id.*). Plaintiff claims he was isolated "the entire time" and "had no other human contact" except for interactions with officers and cellmates. (*Id.*). He claims that the extended period of close management caused him "severe mental, emotional[,] and physical pain." (*Id.*). He also claims he was exposed to the risk of COVID-19 because he was confined with other inmates who had previously tested positive for the virus. (*Id.* at 12). He claims he was exposed to potential assault, deprived of proper sanitation (he had a broken toilet in his cell) and nail clippers, contracted a virus, and was denied medical attention for a tooth infection. (*Id.*).

Plaintiff claims Defendants violated his "statutory right to liberty" and the Fourteenth Amendment's Due Process Clause when they confined him to close

management II.  (*Id.* at 13, 15).   He seeks $100,000 in compensatory damages and $40,000 in punitive damages from each Defendant.  (*Id.* at 13).

## II.    Statutory Screening Standard

To survive dismissal at the screening phase, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  The plausibility standard is met only where the facts alleged enable "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (internal quotation marks omitted).  And "bare assertions" that "amount to nothing more than a formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Id.* at 681 (internal quotation marks omitted).  "While legal

5

conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

### III.   Discussion

The second amended complaint fails to plausibly allege a procedural due process claim under the Due Process Clause of the Fourteenth Amendment.   A Fourteenth Amendment due process claim requires a plaintiff to establish: "(1) a constitutionally protected interest in life, liberty or property; (2) governmental deprivation of that interest; and (3) the constitutional inadequacy of procedures accompanying the deprivation." *Bank of Jackson Cnty. v. Cherry*, 980 F.2d 1362, 1366 (11th Cir. 1993).   A liberty interest protected by the Fourteenth Amendment may arise from either the Due Process Clause itself or state law.   *See Sandin v. Conner*, 515 U.S. 472, 483-84 (1995).

Generally, prisoners do not have a constitutionally-protected liberty interest in a particular custody classification.   *See Morales v. Chertoff*, 212 F. App'x 888, 890 (11th Cir. 2006) (citations omitted); *Johnson v. Cert*, No. 3:15-CV-1487, 2017 WL 1365562, at *8 (M.D. Fla. Apr. 14, 2017) ("[T]he Due Process Clause does not create a liberty interest in being confined in general population rather than the more restrictive administrative segregation."); *see also Ross v. Sconyers*, No. 2:13-CV-764-WKW, 2016 WL 3763230, at *4 (M.D. Ala. June 16, 2016) ("The Constitution

6

itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement."). In the context of inmate confinement, a liberty interest may be implicated when the confinement poses an "atypical and significant hardship" (*id.* at 484) or serves as a "pretext for indefinite confinement of an inmate." *Hewitt v. Helms*, 459 U.S. 460, 477 n.9 (1983); *see also O'Connor v. Florida*, No. 3:06cv45, 2006 WL 2724876, at *2 (N.D. Fla. Sept. 22, 2006) (discussing liberty interests in the context of inmate confinement).

Here, Plaintiff claims that Defendants violated his procedural due process rights by placing him on close management status following an alleged drug possession violation. Plaintiff's allegations fail to plausibly allege a procedural due process claim because he has not shown a constitutionally-protected liberty interest in his confinement status. *See Morales*, 212 F. App'x at 890; *see also Johnson*, 2017 WL 1365562, at *8 (dismissing an inmate's due process claim because the inmate did not have a constitutionally-protected liberty interest in avoiding close management confinement). Moreover, Plaintiff has not provided facts that demonstrate that his close management confinement—in which he feared assault and exposure to Covid-19 and lacked nail clippers, for example, but was able to communicate with other inmates and guards—"present[ed] the type of atypical, significant deprivation in which a State might conceivably create a liberty interest."

*See Sandin*, 515 U.S. at 486 (holding that "disciplinary segregation, with insignificant exceptions, mirrored those conditions imposed upon inmates in administrative segregation and protective custody"); *see, e.g., Morefield v. Smith*, 404 F. App'x 443, 446 (11th Cir. 2010) (finding that four-years of administrative confinement, although lengthy, did not create a liberty interest when the conditions of confinement were similar to those in the general population).  Nor does it appear that Plaintiff's time in confinement "essentially exceed[ed] the sentence imposed by the court.  *See Kirby v. Siegelman*, 195 F.3d 1285, 1290-91 (11th Cir. 1999).  A search for Plaintiff in the FDOC's online database reveals he is currently serving a life sentence.[2]  Because Plaintiff has not sufficiently alleged a constitutionally-protected liberty interest that was violated by Defendants, he cannot establish a due process claim.

Even if Plaintiff had demonstrated a constitutionally-protected liberty interest, Plaintiff's second amended complaint would fail.  That is so because Plaintiff's second amended complaint fails to plausibly allege that Plaintiff was denied the

---

[2] *See Inmate Population Information Detail*, Fla. Dep't of Corr., https://fdc.myflorida.com/offenderSearch/detail.aspx?Page=Detail&DCNumber=J53774&TypeSearch=AI (last visited 9/1/2023).

process he was entitled to. Instead, Plaintiff is expressing dissatisfaction and disagreement with the result that the process yielded.

Florida's administrative regulations provide that before an inmate may be assigned to close management, he is entitled to a hearing before the institutional classification team. Fla. Admin. Code. § 33-601.800(3). The regulations also require that the inmate receive a minimum of 48 hours' notice to prepare for the hearing; a staff assistant when the classification team determines that the inmate is illiterate or does not understand English, has a disability that would hinder his ability to represent himself, when the complexity of the issue makes it unlikely that the inmate will be able to properly represent himself, or when the inmate requests assistance; personal appearance by the inmate at the hearing; and a written decision which includes the basis for the team's decision. *Id.*; *see also O'Connor v. Fla. Dep't of Corr.*, 379 F. App'x 946, 947 (11th Cir. 2010) (stating that "the minimum requirements of due process for prisoners facing disciplinary action are (1) advance written notice of the charges; (2) a written statement of the reasons for the disciplinary action taken; (3) and the opportunity to call witnesses and present evidence, when consistent with institutional safety and correctional goals") (cleaned up).

Here, Plaintiff alleges that his pre-deprivation hearing was "inadequate" because he does not believe inmates can be placed on confinement status for possessing drugs. But a disagreement with the interpretation of a Florida administrative regulation and the ultimate outcome of the hearing does not create a procedural due process claim for Plaintiff.[3] *See O'Connor*, 379 F. App'x at 948 ("Florida's prison regulations are not constitutional mandates."); *see also Sandin*, 515 U.S. at 483-84. Plaintiff's second amended complaint does not allege constitutionally-inadequate process—in fact, he admits he received notice, a statement of reasons (even though he disagrees with the substance of those reasons), and a hearing in which "all perti[n]ent information" was considered. (*See* Doc. 22 at 7). The crux of Plaintiff's complaint is not the process he received, rather it is the result of the process he received. But procedural due process does not guarantee a particular result—it only guarantees an adequate process leading up to the result. *See Milburn v. City of Lebanon*, 221 F. Supp. 3d 1217, 1222 (D. Or. 2016) ("Attacking the result instead of the process of a procedure does not state a

---

[3] To the extent Plaintiff claims that the result of his prison disciplinary procedure violated state law, such a claim is not cognizable under § 1983. *See Cruz v. Aladro*, 129 F. App'x 549, 550 (11th Cir. 2005) (affirming dismissal where the plaintiff was "merely challenging the application of the state law to him, which was not cognizable under § 1983).

procedural due process claim.").  Plaintiff "has simply failed to allege he was denied the ability to meaningfully present his arguments regarding the contested disciplinary report[] to prison officials."  *See O'Connor*, 379 F. App'x at 948 (affirming the dismissal of a procedural due process claim when the plaintiff "did not allege that he was afforded constitutionally-inadeqaute process"); *see also Nolley v. Warden*, 820 F. App'x 845, 857 (11th Cir. 2020) (determining the inmate failed to state a due process claim when the record demonstrated the inmate received notice, a statement of reasons, and an opportunity to present some evidence at the disciplinary hearing).

### IV.   Conclusion

For the reasons above, it is respectfully **RECOMMENDED**:

1.   This action be **DISMISSED without prejudice** under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted.

2.   The Clerk of Court be directed to close this case.

At Pensacola, Florida this 5th day of September 2023.

/s/ *Zachary C. Bolitho*
Zachary C. Bolitho
United States Magistrate Judge

11

## <u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>. An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.